Dominica C. Anderson (SBN 2988)
Daniel B. Heidtke (SBN 12975)
DUANE MORRIS LLP
100 N. City Parkway, Suite 1560
Las Vegas, NV  89106
Telephone: 415.957.3179
Facsimile:  702.974.1058
Email:  dcanderson@duanemorris.com
         dbheidtke@duanemorris.com

Attorneys for Plaintiffs *Ohio Security Insurance Company,*
*Peerless Indemnity Insurance Company,*
*The Ohio Casualty Insurance Company*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY; PEERLESS INDEMNITY INSURANCE COMPANY; THE OHIO CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>MILWAUKEE INSTRUMENTS, INC.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiffs Ohio Security Insurance Company, Peerless Indemnity Insurance Company, and The Ohio Casualty Insurance Company (collectively, "Plaintiffs"), by and through their attorneys, DUANE MORRIS LLP, bring this Complaint against Milwaukee Instruments, Inc. ("Defendant"), and state:

## I.    NATURE OF THE ACTION

1.     This action involves an insurance dispute between Plaintiffs and Defendant. Defendant was sued in numerous underlying actions pending in Clark County, Nevada.  In those "Underlying Actions," the underlying plaintiffs allege that they suffered injuries after consuming a bottled water product called, "Re$^2$al Alkalized Water" ("Real Water").  In the Underlying Actions, the underlying plaintiffs allege that Defendant sold and/or distributed a product, an oxidation reduction potential meter ("ORP Meter"), that was allegedly used in the manufacture and/or production of Real Water.

2.    Real Water was marketed as alkaline water, i.e., water with a pH (potential of hydrogen) level above a neutral pH of 7.  In general, "pH" is a scale used to indicate whether an aqueous solution is acidic (i.e., pH less than 7), neutral (i.e., pH of 7), or alkaline (i.e., pH of greater than 7).  For instance, and on information and belief, vinegar has an approximate pH of 2.5, whereas bleach has an approximate pH of 13.

3.    The underlying plaintiffs allege that the Real Water they consumed was unsafe and, as a result, caused injuries.  While their injuries varied, there was and is a single alleged cause of the underlying plaintiffs' injuries—their consumption of allegedly adulterated, unsafe Real Water.  That allegedly adulterated, unsafe Real Water was created by the same alleged "inherent flaws in the manufacturing process."  As alleged in multiple of the Underlying Actions:

> The multiple cases of liver damage prior to the end of August 2020, when the Desert Inn plant was closed and the Henderson and Mesa plants were opened, proves that the water was contaminated by common manufacturing flaws and equipment failures that occurred at both plants as opposed to something geographically unique at a specific plant location.

4.    Plaintiffs bring this action to resolve their rights and obligations as respects certain insurance policies issued by them.

5.    On information and belief, and according to the allegations in the Underlying Actions, there was a three-step process used to make Real Water.

6.    On information and belief, and according to allegations in the Underlying Actions, the three-step process to make Real Water involves: (1) running municipal water through an ionization machine to produce purified water with total dissolved solids no greater than ten parts per million; (2) mixing concentrate with selected alkaline minerals into the purified water; and (3) testing the resulting water with an ORP meter and adjusting the concentrate and/or water as necessary.

7.    According to allegations in the Underlying Actions, a "MW500 ORP Meter," distributed and/or sold by Defendant, was used in the process of making Real Water.

8.    On information and belief, Defendant did not sell or otherwise distribute the MW500 ORP Meter allegedly used in the process of making Real Water until April 2017.  On information and belief, a different ORP meter, not sold by Milwaukee, was used prior to April 2017.

2

9.      Subject to the terms, conditions, limitations and exclusions of the relevant policies, Plaintiffs insured Defendant under multiple insurance policies, including commercial general liability or "primary" policies, and commercial umbrella coverage policies, as identified herein.

10.     Plaintiffs accepted, pursuant to a reservation of rights, Defendant's tender of defense in the Underlying Actions.

11.     By this action, and as set forth more specifically below, Plaintiffs seek a judicial declaration of the parties' rights, duties and obligations under Plaintiffs' policies with respect to the defense and indemnity of Defendant in the Underlying Actions.

## II.    PARTIES

12.     Ohio Security Insurance Company is a company organized under the laws of the State of New Hampshire and with its principal place of business in Boston, Massachusetts.

13.     Peerless Indemnity Insurance Company is a company organized under the laws of the State of New Hampshire and with its principal place of business in Boston, Massachusetts.

14.     The Ohio Casualty Insurance Company is a company organized under the laws of the State of New Hampshire and with its principal place of business in Boston, Massachusetts.

15.     At all times relevant, Plaintiffs were authorized to do business in Nevada.

16.     Upon information and belief, and at all times relevant herein, Defendant Milwaukee Instruments, Inc., was a company organized under the laws of the State of North Carolina, with its principal place of business in North Carolina.

## III.   JURISDICTION

17.     Jurisdiction is proper pursuant to 28 U.S.C. §1332 as this is a civil action between citizens of different states where the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves a justiciable controversy between citizens of different states, to wit: Plaintiffs each are companies organized under the laws of the State of New Hampshire, with their principal place of business in Boston, Massachusetts.  On information and belief, Defendant is a company organized under the laws of the State of North Carolina, with its principal place of business in North Carolina. All claims asserted in this action are so related and arise out of a common nucleus of operative facts such that they form part of the same case or controversy.

DM1\14339384.4

18.    Defendant Milwaukee Instruments, Inc., is subject to personal jurisdiction in this District because it conducts substantial business in and has sufficient minimal contacts with this District such that the exercise of personal jurisdiction over it is fair and reasonable.  In addition, Defendant has been sued in over a dozen Underlying Actions, each of which were filed in Clark County, Nevada, and are central to the insurance coverage issues at issue in this action.

## IV.    VENUE

19.    Venue is proper pursuant to 28 U.S.C. §1391 as Defendant operates and/or does business in this judicial district, is subject to the Court's personal jurisdiction in this judicial district, and a substantial part of the events giving rise to the claims occurred in this judicial district.

## V.    GENERAL ALLEGATIONS

20.    As set forth above, upon information and belief, Affinity and/or RWI, and/or RWT manufactured and/or sold and/or distributed Real Water.

21.    All underlying plaintiffs allege in the Underlying Actions that they became ill after consuming Real Water.

## VI.    THE INSURANCE POLICIES

22.    Subject to their terms, conditions, limitations and exclusions, Peerless Indemnity Insurance Company issued three primary policies, each with policy number CBP6776091 (the "Peerless Primary Policies"); and Ohio Security Insurance Company issued nine primary policies, with policy number 55 98 46 68, as summarized below (the "Ohio Security Primary Policies").  The "Peerless Primary Policies" and "Ohio Security Primary Policies" are collectively referred to herein as the "Primary Policies".  Subject to their terms, conditions, and exclusions, the Primary Policies contain limits of $1 million per occurrence and a $2 million aggregate.

23.    Subject to their terms, conditions, limitations and exclusions, Peerless Indemnity Insurance Company issued three umbrella policies, each with policy number CU 8853238 (the "Peerless Umbrella Policies").  The Ohio Casualty Insurance Company issued nine umbrella policies, with policy numbers USO (15) 55 98 46 48 , USO (16) 55 98 46 48, USO (17) 55 98 46 48, USO (18) 55 98 46 48, USO (19) 55 98 46 48, USO (20) 55 98 46 48, USO (21) 55 98 46 48, USO (22) 55 98 46 48, and USO (23) 55 98 46 48  (the "Ohio Casualty Umbrella Policies").  Subject to their

4

terms, conditions, and exclusions, the Umbrella Policies contain limits of $1 million per occurrence and $1 million aggregate.

24.    Subject to their terms, conditions, and exclusions, the Primary Policies and Umbrella Policies cover the following respective policy periods:

| Policy Period | Policy Number |
|---|---|
| 6/1/11 – 6/1/12 | CBP6776091 (Peerless Primary Policy) |
| 6/1/12 – 6/1/13 | CBP6776091 (Peerless Primary Policy) |
| 6/1/13 – 6/1/14 | CBP6776091 (Peerless Primary Policy) |
| 6/1/11 – 6/1/12 | CU8853238 (Peerless Umbrella Policy) |
| 6/1/12 – 6/1/13 | CU8853238 (Peerless Umbrella Policy) |
| 6/1/13 – 6/1/14 | CU8853238 (Peerless Umbrella Policy) |
| 6/1/14 – 6/1/15 | BKS (15) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/14 – 6/1/15 | USO (15) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/15 – 6/1/16 | BKS (16) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/15 – 6/1/16 | USO (16) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/16 – 6/1/17 | BKS (17) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/16 – 6/1/17 | USO (17) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/17 – 6/1/18 | BKS (18) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/17 – 6/1/18 | USO (18) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/18 – 6/1/19 | BKS (19) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/18 – 6/1/19 | USO (19) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/19 – 6/1/20 | BKS (20) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/19 – 6/1/20 | USO (20) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/20 – 6/1/21 | BKS (21) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/20 – 6/1/21 | USO (21) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/21 – 6/1/22 | BKS (22) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/21 – 6/1/22 | USO (22) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/22 – 6/1/23 | BKS (23) 55 98 46 68 (Ohio Security Primary Policy) |

DM1\14339384.4

6/1/22 – 6/1/23                    USO (23) 55 98 46 48 (Ohio Casualty Umbrella Policy)

25.    A true and correct copy of each of the Policies is attached hereto as Exhibits A-X.  To the extent there is a discrepancy between the Policies and the allegations and/or quoted policy language in this Complaint, the Policies control.

26.    The Primary Policies state, in pertinent part, as follows:

COVERAGE  A  -  BODILY  INJURY  AND  PROPERTY  DAMAGE LIABILITY

1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)    The amount we will pay for damages is limited as described in Section III- Limits Of Insurance; and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments- Coverages A and B.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or

6

authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

27.    The Primary Policies further provide, in pertinent part:

2.    Exclusions

This insurance does not apply to:

a.    Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[…]

n.    Recall of Products, Work or Impaired Property

7

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

(3)     "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

28.     The Primary Policies further provide, in pertinent part:

SECTION III – LIMITS OF INSURANCE

1.     The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.     Insureds;

b.     Claims made or "suits" brought; or

c.     Persons or organizations making claims or bringing "suits".

2.     The General Aggregate Limit is the most we will pay for the sum of:

a.     Medical expenses under Coverage C;

b.     Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c.     Damages under Coverage B.

3.     The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

        [...]

5.     Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a.     Damages under Coverage A; and

b.     Medical expenses under Coverage C

8

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

[…]

29.     The Primary Policies further provide, in pertinent part:

SECTION V – DEFINITIONS

[…]

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[…]

16.     "Products-completed operations hazard":

a.     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

[…]

21.     "Your product":

a.     Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (a) You;

    (b) Others trading under your name; or

    (c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.    Includes:

(1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) the providing of or failure to provide warnings or instructions.

    […]

30.    The Primary Policies each contain the following pertinent provision:

    * * * * *

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

[…]

O. BODILY INJURY REDEFINED

Under Section V – Definitions, Definition 3. is replaced by the following:

    3.    "Bodily Injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

    […]

    * * * * *

31.    The Ohio Security Primary Policies also contain the following pertinent provision:

NON-CUMULATION OF LIABILITY LIMITS
(SAME OCCURRENCE)

DM1\14339384.4

The following is added to Paragraph 5. under Section III - Limits Of Insurance:

Non-Cumulation of Liability - Same Occurrence - If one "occurrence" causes "bodily injury" or "property damage" during the policy period and during the policy period of one or more prior, or future, general liability policies issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policies because of such "occurrence."

"For purposes of this endorsement, the term "us" also includes any other company that is or was part of the Liberty Mutual Agency Corporation division of Liberty Mutual Group."

32.    The Ohio Casualty Umbrella Policies provide:

I.      COVERAGE

A.      We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay for damages is limited as described in the INSURING AGREEMENT, SECTION II. LIMITS OF INSURANCE. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION III. DEFENSE.

B.      This insurance applies to:

1.      "Bodily injury" or "property damage" only if:

a.      The "bodily injury" or "property damage" occurs during the Policy Period; and

b.      The "bodily injury" or "property damage" is caused by an "occurrence" happening anywhere; and

c.      Prior to the Policy Period, no "Insured" listed under paragraphs 1.a., 2., 3. or 4. of definition F. under SECTION V. DEFINITIONS, and no employee authorized by you to give or receive notice of an "occurrence" or "claim", knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed "Insured" or authorized employee knew, prior to the Policy Period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the Policy Period will be deemed to have been known prior to the Policy Period. […]

11

C.   "Bodily injury" or "property damage" which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred by any "Insured" listed under paragraphs 1.a., 2., 3. or 4. of definition F. under SECTION V. DEFINITIONS, or any employee authorized by you to give or receive notice of an "occurrence" or "claim", includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the Policy Period.

D.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "Insured" listed under paragraphs 1.a., 2., 3. or 4. of definition F. under SECTION V. DEFINITIONS, or any employee authorized by you to give or receive notice of an "occurrence" or "claim":

1.   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2.   Receives a written or verbal demand or "claim" for damages because of "bodily injury" or "property damage"; or

3.   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

33.   The Ohio Casualty Umbrella Policies also provide, in pertinent part:

II.   LIMITS OF INSURANCE

A.   The Limits of Insurance shown in Item 4. of the Declarations and the rules below state the most we will pay regardless of the number of:

1.   "Insureds";

2.   "claims" made or "suits" brought; or

3.   persons or organizations making "claims" or bringing "suits."

B.   The General Aggregate Limit is the most we will pay for all damages covered under SECTION I. COVERAGE of the INSURING AGREEMENTS, except:

1.   Damages included in the "products-complete operations hazard"; and

2.   Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

The amount stated on the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury", "property damage" or "personal and advertising injury" subject to an aggregate limit in the "underlying insurance".

12

DM1\14339384.4

The General Aggregate applies separately and in the same manner as the aggregate limits in the "underlying insurance".

C.    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the "products-completed operations hazard."

D.    Subject to B. or C. in SECTION II. LIMITS OF INSURANCE, whichever applies, the Each Occurrence Limit is the most we will pay for "bodily injury", "property damage" or "personal and advertising injury" covered under SECTION I. COVERAGE of the INSURING AGREEMENTS because of all:

    1.    "Bodily injury" or "property damage" arising out of one "occurrence"; []

E.    If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

    1.    in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

    2.    in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

F.    The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

G.    Retained Limit

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

    1.    the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

    2.    the amount stated in the Declarations as the Self-Insured Retention as a result of any one "occurrence" or one "offense" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

13

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable the Insured" for said Policy Period.

34.    The Ohio Casualty Umbrella Policies also provide, in pertinent part:

IV.    EXCLUSIONS

This insurance does not apply to:

A.    "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[…]

H.    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.    "your product";

2.    "your work"; or

3.    "impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

35.    The Ohio Casualty Umbrella Policies also provide, in pertinent part:

V.    DEFINITIONS

C.    "Bodily injury" means physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person. "Bodily injury" does not include "bodily injury" arising out of "personal and advertising injury."

DM1\14339384.4

J.    "Occurrence" means:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[…]

O.    "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes any policies issued to replace those policies during the term of this insurance that provide:

1.    at least the same policy limits; and

2.    insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

P.    "Your product" means:

1.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a.    you;

b.    others trading under your name; or

c.    a person or organization whose business or assets you have acquired; and

2.    Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

1.    warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

2.    the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

36.    The Ohio Casualty Umbrella Policies also provide, in pertinent part:

NON-CUMULATION OF LIABILITY (SAME OCCURRENCE)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE PART

The following is added to paragraph D. under SECTION II - LIMITS OF INSURANCE:

Non-Cumulation of Liability - Same Occurrence - If one "occurrence" causes "bodily injury" or "property damage" during the policy period and

15

during the policy period of one or more prior, or future, commercial umbrella policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence."

37.    Defendant tendered the defense of the Underlying Actions to Plaintiffs.

38.    Certain of Plaintiffs agreed to defend Defendant against certain of the Underlying Actions pursuant to reservations of rights.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief – Number of Occurrences)

39.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 38, as though fully set forth herein.

40.    There is an actual and justiciable controversy presented for determination by this Court.

41.    Plaintiffs reserved their rights to assert there is no "occurrence" or that there is one "occurrence" with respect to the Underlying Actions.

42.    Plaintiffs seek a determination of their rights and duties under the Policies with respect to whether the damages at issue in the Underlying Actions were caused by an "occurrence," and if so, how many "occurrences."

43.    On information and belief, the process of manufacturing Real Water was uniform and consistent.  The manufacturing process required creating and mixing a "proprietary concentrate" into water, and then bottling that water for sale and distribution.

44.    According to allegations in the Underlying Actions, Defendant's product, a MW500 ORP Meter, was used during the Real Water manufacturing process.  The underlying plaintiffs allege that Defendant failed to provide adequate warnings and/or instructions on the use of Defendant's product, resulting in the production of unsafe Real Water.  The underlying plaintiffs allege they were injured when they allegedly consumed unsafe Real Water.

45.    The Policies each provide that an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions".

DM1\14339384.4

46. Because "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" and the underlying plaintiffs allege that Defendant failed to provide adequate warnings and/or instructions allegedly resulting in the production of unsafe Real Water, Plaintiffs seek a judicial determination that the damages at issue in the Underlying Actions were caused by, at most, one "occurrence".

47. Plaintiffs also seek any and all judicial determinations that naturally flow from a ruling on the "occurrence" that caused the damages at issue in the Underlying Actions, including the resulting application of specific policy terms in certain Policies.

48. Plaintiffs are informed and believe and on that basis allege that Defendant disputes that there was one "occurrence" or no "occurrences" that resulted in the damages at issue in the Underlying Actions.

49. A determination is necessary and proper at this time so that Plaintiffs and Defendant may ascertain their respective rights and duties under the Policies.

50. Therefore, Plaintiffs seek a judicial declaration of the parties' rights, duties and obligations under the Policies, and seek a declaration that there was, at most, one "occurrence" that resulted in the Underlying Actions.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief – No Coverage under Non-Triggered Policies)

51. Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 50 as though fully set forth herein.

52. The Underlying Actions do not allege any "bodily injury" occurring prior to February 2016. In addition, on information and belief, Defendant did not sell or otherwise distribute the MW500 ORP Meter allegedly used in the process of making Real Water until April 2017. On information and belief, a different ORP meter was used in the process of making Real Water prior to April 2017.

53. The Peerless Primary Policies and Peerless Umbrella Policies were issued for the following periods:

6/1/11 – 6/1/12          CBP6776091 (Peerless Primary Policy)

17

DM1\14339384.4

|   |   |
|---|---|
| 6/1/12 – 6/1/13 | CBP6776091 (Peerless Primary Policy) |
| 6/1/13 – 6/1/14 | CBP6776091 (Peerless Primary Policy) |
| 6/1/11 – 6/1/12 | CU8853238 (Peerless Umbrella Policy) |
| 6/1/12 – 6/1/13 | CU8853238 (Peerless Umbrella Policy) |
| 6/1/13 – 6/1/14 | CU8853238 (Peerless Umbrella Policy) |

54.    In addition, Ohio Security and Ohio Casualty issued policies for the following periods:

|   |   |
|---|---|
| 6/1/14 – 6/1/15 | BKS (15) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/14 – 6/1/15 | USO (15) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/15 – 6/1/16 | BKS (16) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/15 – 6/1/16 | USO (16) 55 98 46 48 (Ohio Casualty Umbrella Policy) |

55.    The Peerless Primary Policies, Peerless Umbrella Policies, Ohio Security Primary Policy Nos. BKS (15) 55 98 46 48 and BKS (16) 55 98 46 48, and Ohio Casualty Umbrella Policy Nos. USO (15) 55 98 46 48 and USO (16) 55 98 46 48, are collectively herein referred to as the "Earlier Policies".

56.    Plaintiffs reserved their right to deny coverage.

57.    Because, on information and belief, no product sold and/or distributed by Defendant was used in the process of making Real Water prior to April 2017, there was no "occurrence" and no "bodily injury" during the Earlier Policies and, thus, no coverage under the Earlier Policies for any damages at issue in the Underlying Actions.

58.    In addition, Ohio Security and Ohio Casualty issued policies for the following periods:

|   |   |
|---|---|
| 6/1/21 – 6/1/22 | BKS (22) 55 98 46 68 (Ohio Security Primary Policy) |
| 6/1/21 – 6/1/22 | USO (22) 55 98 46 48 (Ohio Casualty Umbrella Policy) |
| 6/1/22 – 6/1/23 | BKS (23) 55 98 46 68 (Ohio Security Primary Policy) |

59.    Ohio Security Primary Policy Nos. BKS (22) 55 98 46 68 and BKS (23) 55 98 46 68 and Ohio Casualty Umbrella Policy USO (22) 55 98 46 48, are collectively referred to as the "Later Policies".  The Earlier Policies and the Later Policies are collectively referred to herein as the "Non-Triggered Policies".

DM1\14339384.4

60.    On information and belief, Real Water was recalled in March 2021, no products were thereafter consumed or otherwise resulted in "bodily injury" and, as a result, there was no occurrence or "bodily injury" during the Later Policies and, thus, no coverage under the Later Policies for any damages at issue in the Underlying Actions.

61.    Plaintiffs are informed and believe and on that basis allege that Defendant disputes that there is no coverage under the Non-Triggered Policies.

62.    Therefore, Plaintiffs seek a judicial declaration of the parties' rights, duties and obligations under the Policies, including a judicial declaration that there is no coverage for the Non-Triggered Policies.

### THIRD CLAIM FOR RELIEF

### (Declaratory Relief –Attorneys' Fees are not Covered "Damages")

63.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 62, as though fully set forth herein.

64.    There is an actual and justiciable controversy presented for determination by this Court.

65.    Plaintiffs assert that attorneys' fees awarded to plaintiffs in the Underlying Actions, against Defendant, are not covered under the Policies.

66.    Plaintiffs are informed and believe and on that basis allege that Defendant disputes that there is no coverage under the Policies for attorneys' fees awarded against Defendant in the Underlying Actions.

67.    A determination is necessary and proper at this time so that Plaintiffs and Defendant may ascertain their respective rights and duties under the Policies.

68.    Therefore, Plaintiffs seek a judicial declaration of the parties' rights, duties and obligations under the Policies, and seek a declaration that attorneys' fees and costs awarded to plaintiffs in the Underlying Actions are excluded under the Policies.

DM1\14339384.4

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief – Punitive Damages are not Covered "Damages")

69.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 68, as though fully set forth herein.

70.     There is an actual and justiciable controversy presented for determination by this Court.

71.     Although Nevada law allows an insurer to insure against legal liability for exemplary or punitive damages, nothing in the Policies provides such affirmative coverage.

72.     Plaintiffs seek a judicial determination that the Policies do not provide coverage for exemplary or punitive damages.

73.     Plaintiffs are informed and believe and on that basis allege that Defendant disputes that there is no coverage under the Policies for punitive damages awarded against Defendant in the Underlying Actions.

74.     A determination is necessary and proper at this time so that Plaintiffs and Defendant may ascertain their respective rights and duties under the Policies.

75.     Therefore, Plaintiffs seek a judicial declaration of the parties' rights, duties and obligations under the Policies, and seek a declaration that punitive damages awarded to the underlying plaintiffs in the Underlying Actions against Defendant are not covered under the Policies.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief – Non-Cumulation Clauses)

76.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 75, as though fully set forth herein.

77.     As alleged above, if there was an "occurrence" that caused damages at issue in the Underlying Actions, there was a single "occurrence".

78.     The Ohio Security Primary Policies each contain the following clause:

NON-CUMULATION OF LIABILITY LIMITS
(SAME OCCURRENCE)

The following is added to Paragraph 5. under Section III - Limits Of Insurance:

20

DM1\14339384.4

Non-Cumulation of Liability - Same Occurrence - If one "occurrence" causes "bodily injury" or "property damage" during the policy period and during the policy period of one or more prior, or future, general liability policies issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policies because of such "occurrence."

"For purposes of this endorsement, the term "us" also includes any other company that is or was part of the Liberty Mutual Agency Corporation division of Liberty Mutual Group."

79.    The Ohio Casualty Umbrella Policies each contain the following clause:

NON-CUMULATION OF LIABILITY (SAME OCCURRENCE)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE PART

The following is added to paragraph D. under SECTION II - LIMITS OF INSURANCE:

Non-Cumulation of Liability - Same Occurrence - If one "occurrence" causes "bodily injury" or "property damage" during the policy period and during the policy period of one or more prior, or future, commercial umbrella policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence."

80.    Because the damages at issue in the Underlying Actions were caused, if at all, by a single "occurrence," Plaintiffs seek a judicial determination of their rights and obligations under the Policies with respect to the Ohio Security Primary Policies' and the Ohio Casualty Umbrella Policies' Non-Cumulation Clauses.

81.    A determination is necessary and proper at this time so that Plaintiffs and Defendant may ascertain their respective rights and duties under the Policies.

82.    Therefore, Plaintiffs seek a judicial declaration of the parties' rights, duties and obligations under the Policies, and seek a declaration that the Non-Cumulation Clauses limit and/or otherwise reduce the available "occurrence" limits under the Ohio Security Primary Policies and the Ohio Casualty Umbrella Policies.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for the following relief:

21

DM1\14339384.4

1.  A judicial declaration of the parties' rights, duties and obligations under the Policies, including:

    a.  A judicial declaration that if the damages at issue in the Underlying Actions arose from an "occurrence," there was one "occurrence" in total;

    b.  Any and all judicial determinations that naturally flow from a ruling on the "occurrence" that caused the damages at issue in the Underlying Actions, including the resulting application of specific policy terms in certain Policies;

    c.  A judicial declaration there is no coverage under the Non-Triggered Policies;

    d.  A judicial declaration that attorneys' fees and costs awarded to plaintiffs in the Underlying Actions are not covered under the Policies;

    e.  A judicial declaration that punitive damages awarded to plaintiffs in the Underlying Actions are not covered under the Policies; and

    f.  A judicial declaration that the Non-Cumulation Clauses limit and/or otherwise reduce the available "occurrence" limits under the Ohio Security Primary Policies and the Ohio Casualty Umbrella Policies;

2.  For attorney's fees and costs incurred in this action pursuant to contract or otherwise; and

3.  For such other and further relief as the Court may deem appropriate.

Dated: September 1, 2023                    **DUANE MORRIS LLP**

                                            By:   */s/ Daniel B. Heidtke*
                                                  Dominica C. Anderson (SBN 2988)
                                                  Daniel B. Heidtke (SBN 12975)

                                            Attorneys for Plaintiffs *Ohio Security Insurance Company, Peerless Indemnity Insurance Company, and The Ohio Casualty Insurance Company*

DM1\14339384.4